IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AKRAM LEWAL,                          :
                                      :
            Plaintiff                 :        CIVIL NO. 1:CV-06-0687
                                      :
      v.                              :        (Judge Rambo)
                                      :
R. ALI, *et al.*,                     :
                                      :
            Defendants                :

# M E M O R A N D U M

## I.    Background

Plaintiff, Akram Lewal, an inmate at the Allenwood Low Security Correctional Institution ("LSCI-Allenwood") in White Deer, Pennsylvania, commenced this action *pro se* by filing a *Bivens*[1] civil rights complaint (Doc. 1).  Defendants are the following LSCI-Allenwood officials: Warden, Troy Williamson; Asst. Healthcare Admin., James Patope; Chief Medical Supervisor, Dr. J. Brady; and Health Care Provider, R. Ali.  Plaintiff claims that Defendants have been deliberately indifferent to his serious medical needs, in contravention of the Eighth Amendment proscription

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

of cruel and unusual punishment.  Specifically, he claims that Defendants have been

indifferent to his recurrent headaches, a rash on his leg, numbness in portions of his

body, and bleeding from his feet.  (Doc. 1 at 3.)  Defendants demonstrated "deliberate

indifference when three times health service staff failed to act on my request for a[n]

MRI . . . when I have been complaining about having pain, bleeding foot and my

body feeling numb."  (Doc. 11 at 10.)  Plaintiff seeks "judgment of Defendants for the

deprivation of, and for conspiracy to deprive him of, his [Constitutional rights]."

(Doc. 1 at 8.)

        Plaintiff arrived at LSCI-Allenwood on August 13, 2002.  His medical records

from his previous place of incarceration indicated that he "has a history of post

traumatic stress disorder secondary to being 'tortured in Afghanistan,' psychosis with

possible somatization disorder,[2] and muscle contraction headaches.  (Doc. 9 Ex. 1 ¶

9.)  His records show that because of his complaints of headaches, he had been sent to

an outside neurologist and had received an MRI in an attempt to determine their

cause. (*Id.* ¶¶ 9-13.)  The headaches were not caused by neurological factors, nor did

the MRI show any abnormalities in Lewal's brain or brain stem that would lead to

---

[2]According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, somatization disorder involves the manifestation of physical symptoms such as pain, gastrointestinal disturbances, or psuedo-neurological symptoms, without an underlying physical illness.

headaches.  (*Id.* ¶¶ 10, 13.)  Since his arrival at LSCI-Allenwood, Lewal has been examined numerous times for complaints of headaches and a foot rash.  (*Id.* ¶ 14.)

On August 16, 2004, Plaintiff was discovered on the ground at the food service building.  He complained of back pain on his left side, radiating down his left leg, and he complained of a headache in his left temple.  (*Id.* ¶ 15.)  Plaintiff was examined, and no abnormalities were noted.  (*Id.*)  He was told that a follow-up exam would be scheduled within a week and to make sick-call as necessary.  (*Id.*)  Upon release from health services after observation, he was in "good spirits and smiling."  (*Id.* ¶ 17; Doc. 11 at 3-4)  On August 23, 2004, Plaintiff reported to health services complaining of lower back pain he claimed was "secondary to a 'stroke' he had in 1990."  (Doc. 9 Ex. 1 ¶ 18.)  Medical personnel noted that Plaintiff was alert and oriented and walking without any difficulty.  (*Id.*)  During the visit, Plaintiff's requests for a liver function test, an MRI, and a CT scan from his "personal doctor" were denied.  (*Id.*)

On August 27, 2004, Plaintiff reported to health services because he had fallen and developed a sudden headache.  He was examined by the Clinical Director, Dr. Brady, who reported normal findings.  (*Id.* ¶ 19.)  The doctor found no evidence of a stroke or other malady requiring further testing, thus Plaintiff's request for an MRI was denied.  (*Id.*)  Although Dr. Brady tried to discuss alternative treatment with Plaintiff, Plaintiff refused and insisted on an MRI.  (*Id.* ¶ 20.)  Plaintiff was seen

again for his complaints of headache on December 23, 2004, and a neurological examination revealed normal findings.  (*Id.* ¶ 23.)

Plaintiff has also complained of a foot and leg rash.  He has received examination and treatment for these complaints by prison health services on October 5, 2004, November 1 and 15, 2004, December 23, 2004, December 30, 2004, February 15, 2005, and January 7, 11, and 24, 2006.  (*Id.* ¶¶ 21-27.)  Plaintiff was evaluated by a dermatologist on January 18, 2005, for complaints of pain in his foot. (*Id.* ¶ 25.)  Plaintiff was diagnosed with plantar fascitis[3] and chronic stasis dermatitis.[4] (*Id.*)  He was instructed to apply ice, to continue his previously prescribed ibuprofen, and to follow up with his primary care provider.  (*Id.*)

Defendants' motion to dismiss and for summary judgment (Doc. 7) is before the court.  The motion has been briefed and it is ripe for disposition.  For the following reasons, the motion will be granted.

## II.   **Discussion**

Defendants' motion to dismiss and for summary judgment raises a number of arguments.  Because they are dispositive, the court will address two issues, subject

---

[3]Inflamation of the plantar fascia, a thin layer of tough tissue supporting the arch of the foot.

[4]Stasis dermatitis are skin changes caused by fluid build-up under the skin.

matter jurisdiction and qualified immunity.  Defendants' other arguments will not be discussed.

### A. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

When a challenge is posed to the court's subject matter jurisdiction to hear a matter under Federal Rule of Civil Procedure 12(b)(1), that question must be addressed before any others.  Here, Defendants argue that this court lacks subject matter jurisdiction over Plaintiff's claims against them in their official capacities because the United States – and, by extension, its officials and agents – is entitled to sovereign immunity.  The United States has not consented to be sued for money damages such as those claimed by Plaintiff.  The court agrees.

"It is a fundamental principle of sovereign immunity that federal courts do not have jurisdiction over suits against the United States [and its agencies] unless Congress, via a statute, expressly and unequivocally waives the United States' immunity to suit."  *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (internal citations omitted); *see 7FDIC v. Meyer*, 510 U.S. 471, 486 (1994).  Absent a waiver, claims against the United States and its agencies that seek monetary damages for constitutional violations must be dismissed for lack of subject matter jurisdiction. *Bein*, 214 F.3d at 412.  Similarly, sovereign immunity bars damages claims against government agents in their official capacities.  *Chinchello v. Fenton*, 805 F.2d 126,

130 n.4 (3d Cir. 1986).  While the government may waive immunity, such a waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted); *accord Cudjoe ex rel. Cudjoe v. Dept. of Veterans Affairs*, 426 F.3d 241, 246 (3d Cir. 2005).

The United States has not waived sovereign immunity for damages claims against government agents in their official capacities.  Accordingly, this court lacks subject matter jurisdiction to adjudicate such claims.  However, because a liberal reading of Plaintiff's pro se complaint could lead to the conclusion that Defendants were sued in their individual capacities, the court will address Defendants' motion for summary judgment on qualified immunity.  On this issue, amendment of Plaintiff's complaint would be futile.

### B.  Summary Judgment on Qualified Immunity

#### 1.  Legal Standard for Summary Judgment

Defendants move for summary judgment based upon the affirmative defense of qualified immunity.  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if

it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.*  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232.

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232 (quoting

*Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## 2. **Qualified Immunity Under *Bivens***

"A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). As in suits under § 1983, if *Bivens* defendants show that they are entitled to the affirmative defense of qualified immunity, they will be granted summary judgment. *Butz v. Economu*, 438 U.S. 478, 499 (1978).

Qualified immunity is an affirmative defense for government officials accused of violating a citizen's constitutional or statutory rights. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). If it applies, qualified immunity provides more than immunity from recovery of damages. It "is the 'entitlement not to stand trial or face the other burdens of litigation.'" *Thomas*, 463 F.3d at 291 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The purpose of the doctrine is to strike the proper balance between the compelling interests in vindicating citizens' constitutional rights and in public officials' effective performance of their duties. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity determination should be made at the earliest possible stage of litigation, long before trial if possible. *Hunter*, 502 U.S. at 227-28;

*Thomas*, 463 F.3d at 291.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).  A right is "clearly established" when, objectively, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.  Qualified immunity applies when an officer shows that an objectively reasonable government official under the same circumstances would have believed his or her conduct was lawful. *Hunter*, 502 U.S. at 228; *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997).  If there are "underlying historical facts in dispute that are material to the resolution of the question[ ] whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them," summary judgment is not appropriate. *Sharrar*, 128 F.3d at 828.

The clearly-established Constitutional right implicated in this case is the Eighth Amendment requirement that prison officials provide adequate medical care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently

9

harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

Thus, the inquiry has two prongs: the prisoner's medical needs must be serious and

prison officials must have been deliberately indifferent to it. *Monmouth County Corr.*

*Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). The court will assume,

without deciding, that Plaintiff's medical needs are serious.

Deliberate indifference is a "subjective standard of liability consistent with

recklessness as that term is defined in criminal law." *Nicini v. Morra*, 212 F.3d 798,

811 (3d Cir. 2000). A prison official may be liable for violating a prisoner's Eighth

Amendment rights if the plaintiff proves that the official "knows of and disregards

an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837

(1994). An inadvertent failure to provide for a prisoner's serious medical needs is not

actionable, nor is negligence rising to the level of medical malpractice. *Estelle*, 429

U.S. at 106. There is no violation of the Eighth Amendment when a prisoner merely

disagrees with the medical judgment of prison officials as to a prisoner's course of

treatment. *Lanzaro*, 834 F.2d at 346. "[A]s long as a physician exercises

professional judgment his behavior will not violate a prisoner's constitutional rights."

*Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Applying the contours of the clearly-established right to adequate medical care

to the qualified immunity analysis, the court concludes that the actions of Defendants

10

did not violate the Eighth Amendment.  Even if they did, objectively reasonable

government medical personnel under the same circumstances as Defendants would

have believed his or her conduct was lawful.  *See Hunter*, 502 U.S. at 228.  The facts,

even taken in the light most beneficial to Plaintiff, show that each time Plaintiff made

a complaint of medical problems to the health services department at LSCI-

Allenwood, he was seen and evaluated for the problems.  The medical staff exercised

its professional judgment in conducting each exam and arriving at its conclusions

about Plaintiff's course of treatment.  Outside testing was not medically indicated

because the results of their own examinations and tests showed normal results.

Plaintiff's conclusory allegations that his requests for specific tests, such as a liver

function test, CT scan, or MRI, were denied out of deliberate indifference to his

medical needs are not sufficient to withstand summary judgment.  Plaintiff's

disagreement with their diagnosis and course of treatment does not mean that his

Eighth Amendment right to adequate medical care has been violated.[5]  Summary

judgment will be granted for Defendants in their individual capacities.

---

[5]  Because the court has concluded that there has been no violation of Plaintiff's
constitutional rights, Defendants are entitled to summary judgment in their favor on his allegations of
conspiracy to deprive him of those rights.

**III.**    **<u>Conclusion</u>**

The court will dismiss Plaintiff's claims for monetary damages against

Defendants in their official capacities, because the court lacks subject matter

jurisdiction over such claims.  Further, because Plaintiff fails to demonstrate that

Defendants were deliberately indifferent to his serious medical needs, Defendants'

motion for summary judgment will be granted on claims against them in their

individual capacities.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  June 5, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AKRAM LEWAL,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-06-0687** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **R. ALI,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>O R D E R</u>

**AND NOW,** in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1) Defendants' motion to dismiss claims against them in their official capacities is **GRANTED**.

2) Defendants' motion for summary judgment on claims against them in their individual capacities is **GRANTED**.

3) The Clerk of Court shall close this case.

4) Any appeal from this order shall be deemed frivolous, without probable

cause, and not taken in good faith.

                                    s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated:  June 5, 2007.